UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GORDON,

      Petitioner,

v.                                    Case No: 2:14-cv-549-FtM-29CM

SECRETARY,   DEPARTMENT   OF
CORRECTIONS   and   ATTORNEY
GENERAL, STATE OF FLORIDA,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Edward Lee Gordon ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed December 11, 2014). Petitioner attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Collier County, Florida for the sale or delivery of cocaine and possession with intent to sell cocaine. Id. Respondent filed a response to the petition (Doc. 18).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner filed a reply (Doc. 34), and the case is now ripe for review.

Petitioner raises three claims in his petition.  He asserts that: (1) the trial court erred when it denied as untimely a motion to dismiss the charges against him on the ground that exculpatory evidence had been destroyed by the police; (2) trial counsel ("Counsel") was ineffective for accidentally eliciting collateral crimes testimony at Petitioner's trial; and (3) Counsel was ineffective for failing "to file contemporaneous motion[s] in limine to preserve and suppress exculpatory and inculpatory evidence." (Doc. 1 at 5-15).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On December 10, 2008, Petitioner was charged by information with the sale or delivery of cocaine on January 18, 2008 and February 22, 2008 in violation of Florida Statute § 893.13(1)(a) (counts one and two) and possession of cocaine with intent to sell

or deliver on January 18, 2008 and February 22, 2008 in violation of Florida Statute § 893.13(1)(a) (counts three and four) (Ex. 1 at 21-22).  A jury found Petitioner guilty as charged (Ex. 1 at 41-42; Ex. 2).  The trial court sentenced Petitioner as a habitual felony offender to ten years in prison on each count with counts one and three to run concurrent to each other and counts two and four to run concurrent to each other, but consecutive to counts one and three (Ex. 1 at 67-71).  Florida's Second District Court of Appeal affirmed Petitioner's convictions and sentences without a written opinion (Ex. 5); Gordon v. State, 50 So. 3d 606 (Fla. 2d DCA 2010) (per curiam).

On August 2, 2011, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised two claims of ineffective assistance of counsel ("Rule 3.850 motion").  The post-conviction court denied ground two of the motion and ordered an evidentiary hearing on ground one (Ex. 10).  After conducting an evidentiary hearing (Ex. 11), the state post-conviction court denied ground two (Ex. 12).  Florida's Second District Court of Appeal affirmed the state post-conviction court's adjudication of this claim without a written opinion (Ex. 15); Gordon v. State, 137 So. 3d 382 (Fla. 2d DCA 2014) (per curiam).

## II.  <u>Governing Legal Principles</u>

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Wilson v. Corcoran</u>, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. <u>White</u>, 134 S. Ct. at 1702; <u>Carey v. Musladin</u>,

549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the

facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

**B.   Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of

counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### III. **Analysis**

#### A.   **Claim One**

Petitioner asserts that the trial court erred when it denied as untimely a motion to dismiss the charges against him (Doc. 1 at 5-6).[2]   Specifically, two days before his trial, Petitioner filed

---

[2] Claims One and Three of the instant petition involve Petitioner's assertion that he was mistakenly identified as the person who sold drugs to an undercover police officer on January 18, 2008 and February 22, 2008. At trial, evidence was presented that after buying drugs from a dealer on February 22, 2008, an undercover police officer called a second officer with a

a motion to dismiss his case pursuant to Rule 3.190(c)(4)[3] of the

Florida Rules of Criminal Procedure (Ex. 1 at 23).  In the motion,

---

description of the dealer's car and the car's license tag number.
Minutes later, Petitioner's car was stopped by the second police
officer, and Petitioner was told at the time that the stop was
because of a broken tag light.  He was not arrested for the drug
offenses until several months later.  Petitioner now asserts that
that, although his car's tag number matched that of the dealer,
the description of his car and his personal physical
characteristics differed from the descriptions initially provided
by the undercover police officer. See discussion infra Claims One,
Two, and Three.

> [3] Rule 3.190(c) provides in pertinent part:
>
>> Unless the court grants further time, the
>> defendant shall move to dismiss the indictment
>> of information either before or at
>> arraignment.  The court in its discretion may
>> permit the defendant to plead and thereafter
>> to file a motion to dismiss at a time to be
>> set by the court. Except for objections based
>> on fundamental grounds, every ground for a
>> motion to dismiss that is not presented by a
>> motion to dismiss within the time hereinabove
>> provided shall be considered waived. However,
>> the court may at any time entertain a motion
>> to dismiss on any of the following grounds:
>>
>>> (1)  The defendant is charged with an
>>> offense for which the defendant has been
>>> pardoned.
>>>
>>> (2)  The defendant is charged with an
>>> offense for which the defendant
>>> previously has been placed in jeopardy.
>>>
>>> (3)  The defendant is charged with an
>>> offense for which the defendant
>>> previously has been granted immunity.
>>>
>>> (4) There are no material disputed facts
>>> and the undisputed facts do not establish

Petitioner alleged that "there are no disputed facts and the undisputed facts do not establish a prima facie case of guilt against the Defendant[.]" Id.  The motion stated that Petitioner was stopped by Officer Joseph Ellis of the Collier County Sheriff's Office on February 22, 2008 for an alleged tag light malfunction. Id.  Officer Ellis identified Petitioner during the interaction through his driver's license. Id.  Petitioner was not arrested on the instant drug charges until November 18, 2008. Id.  On March 2, 2009, Counsel requested, and received, audio and video evidence in the case. Id.  Subsequently, Counsel learned that the February 22, 2008 stop had been recorded by Officer Ellis' dashboard camera. Id.  On May 15, 2009, Counsel requested a copy of the video of the stop. Id.  Counsel was informed that the video had already been destroyed per Collier County Sheriff's Office policy. Id. at 32.

The trial court denied the motion to dismiss as untimely and concluded that Petitioner did not have personal knowledge of the video's contents (T. at 8-9).  Petitioner now argues in Claim One that the in-car ("dash-cam") video of his stop by the police would have shown that the car he was driving at the time of the stop was not the same car identified by undercover police officer Patti Rodriguez. Id. at 7.  Petitioner raised this claim on direct

_____

                    a prima facie case of guilt against the
                    defendant.

Fla. R. Crim. P. 3.190(c).

appeal, and Florida's Second District Court of Appeal denied relief (Ex. 5).

Respondent urges that Petitioner did not properly exhaust Claim One because he did not fairly present the constitutional dimension of the claim to the Florida trial court and then brief it on direct appeal (Doc. 18 at 19-20).[4]  Respondent also notes that Claim One challenges the application of state law which is not cognizable on federal habeas review.  Id. at 21.  Respondent is correct that the constitutional dimension of Claim One was not raised in the trial court (T. at 3-8).  However, in his brief on direct appeal, Petitioner argued, without elaboration, that the trial court's "[f]ailure to rule on and grant [his motion to dismiss] violated Appellant's rights to due process as guaranteed by the state and federal constitutions." (Ex. 3 at 11).  It is unnecessary for this Court to consider whether Petitioner's cursory reference to constitutional due process in his appellate brief exhausted Claim One because the claim fails on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of

---

[4] In order to exhaust a claim in the state courts, the petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

the applicant to exhaust the remedies available in the courts of the State.").

To the extent Petitioner raises a constitutional due process claim based upon the state's destruction of Officer Ellis' dash-cam video, he is not entitled to federal habeas corpus relief.[5] The Due Process Clause of the Fourteenth Amendment protects a defendant's right "to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." California v. Trombetta, 467 U.S. 479, 485 (1984). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); State v. Thomas, 826 So. 2d 1048, 1049 (Fla. 2d DCA 2002) ("the loss or destruction of evidence that is only *potentially* useful to the defense violates due process only if the defendant can show bad faith on the part of the police or prosecution.")(emphasis in original)(citing Youngblood, 488 U.S. at 58).

---

[5] To the extent Petitioner argues that the trial court violated Florida law by denying his motion as untimely, habeas relief does not lie for errors of state law. Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

Petitioner does not demonstrate that Officer Ellis' dash-cam video would have been more than potentially useful.   At trial, Officer Patti Rodriguez, the officer who arranged and conducted the undercover drug transactions with Petitioner, testified that Petitioner drove a blue Sunbird to a meeting point to sell her cocaine on February 22, 2008 (T. at 123, 155).   Officer Ellis testified that Officer Rodriguez called him immediately after this drug transaction and described the drug dealer's car and a license number (T. at 181).   Officer Rodriguez asked Officer Ellis "to try and stop the car to identify the driver." Id.   Officer Ellis testified that Officer Rodriguez described the car to him as "a two-door Pontiac, green in color, Sunfire, Sunbird, something along those lines." Id.   Subsequently, Officer Ellis stopped a green Sunbird with a matching license number, and Petitioner was the person driving the green Sunbird. Id.   After obtaining Petitioner's driver's license information, Officer Ellis let Petitioner go. Id. at 194.

Petitioner contends that Officer Ellis' dash-cam video would have underscored the officers' discrepancies in testimony regarding the color of the drug dealer's car and may have resulted in a different verdict at trial (Doc. 1 at 7).   In closing, the state admitted that there was a discrepancy in the officers' testimony as to the color of the car (T. at 222).   Accordingly, the only usefulness of the video would have been to show the color

of Petitioner's car.  Given that the jury was aware that Officers Rodriguez and Ellis disagreed as to whether the Sunbird was green or blue, it is unclear why Petitioner believes that the video would have exonerated him.  Petitioner's due process argument centers on his speculation that *if* the jury viewed the tape, it *may* have proved that he was not the person who sold drugs to Officer Rodriguez.  In the absence of anything more concrete than Petitioner's speculation, it was reasonable for the state courts to conclude that Officer Ellis' dash-cam video would not have been more than potentially useful to Petitioner's case.

Moreover, Petitioner did not allege in his brief on direct appeal, or in the instant petition, that the video of his traffic stop was destroyed in bad faith.[6]  Even had Counsel requested the video prior to its destruction, Petitioner must still show that

---

[6] Counsel for Petitioner told the trial court that the dash-cam video had probably been routinely destroyed per department policy before a request for video evidence was made (T. at 191).  Counsel also admitted that he never filed a motion to preserve video evidence. Id. at 193. However, Petitioner argued in his state Rule 3.850 motion (filed more than a year after his brief on direct appeal) that a public records request – made after the conclusion of direct appeal – showed that the video was routinely destroyed twenty-five days after Counsel made a discovery request for all the evidence in the case (Ex. 7 at 14-15).  Because Petitioner made this claim only after the conclusion of direct appeal, neither the trial court nor the appellate court would have been aware of the dates of any discovery request or the dash-cam video's destruction and would have reasonably relied on Counsel's representations.  Petitioner's assertion that Counsel was constitutionally ineffective for failing to timely seek preservation of the dash-cam video is addressed in Claim Three, infra.

the video was destroyed in bad faith before he can demonstrate a due process violation. <u>Illinois v. Fisher</u>, 540 U.S. 544, 548 (2004) ("We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police."). Mere negligence on the government's part in failing to preserve evidence is inadequate to show bad faith. <u>Youngblood</u>, 488 U.S. at 58. Moreover, courts have held that the government does not necessarily engage in bad faith conduct when the destruction of evidence results from a standard procedure employed by the government department or agency regarding the disposal of like evidence, at least when there is adequate documentation of the destroyed evidence. <u>United States v. Gibson</u>, 963 F.2d 708, 711 (5th Cir. 1992). Officer Ellis testified that dash videos are generally kept for one year and then routinely destroyed (T. at 185). The state court could have reasonably concluded that only "mere negligence," not bad faith, was associated with the destruction of the dash-cam video.

Petitioner fails to show that the state court's adjudication of this claim was contrary to, or an unreasonable application of <u>Trombetta</u>, <u>Youngblood</u>, or any other clearly established federal law. Nor has Petitioner shown that the state court's adjudication was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Claim One is denied pursuant to 28 U.S.C. § 2254(d).

**B.   Claim Two**

Petitioner asserts that Counsel was ineffective for accidentally eliciting testimony of collateral crimes from a witness at his trial (Doc. 1 at 8-9).  Specifically, Petitioner directs the Court to a portion of the trial transcript in which Counsel questioned Officer Rodriguez about her investigation of the case.  Counsel asked the officer why she waited seven months after the last drug transaction (and after the stop of Petitioner's car by Officer Ellis) to apply for an arrest warrant on the drug charges:

> Q.   Okay.   So over seven months, then, elapsed since the February transaction and when you decided to apply for an arrest warrant?
>
> A.   That is correct.
>
> Q.   What was being done to further the investigation between February 22nd of 2008 and August 3rd?
>
> A.   Like I said, we wait a few, you know, some – we let pass a couple of months just to make sure if he is dealing with other people, like he's dealing with me, he will not remember or try not to remember that I was the one that arrested him.
>
> Q.   Okay.   So let me ask it another way. During this time when you said in your report that you left the case open for investigation, you didn't talk to anyone about this case?
>
> A.   Between what dates are we talking about?

> Q.  Between the February 22nd date and October 3rd, you didn't talk to anybody about this case.
>
> A.  Yes, I did.
>
> Q.  Who did you talk to?
>
> A.  Lee County.
>
> Q.  Okay. And what did – who did you talk to in Lee County?
>
> A.  It was a sergeant.  I don't remember his name now.
>
> Q.  And what was going on with – were you trying to get Lee County's cooperation?
>
> A.  Lee County was also looking at him.

(T. at 157-58).  At this point, Counsel was cautioned by the trial court not to "open the door too wide." Id. at 158.  Counsel admitted that "[i]t is a little open.  She said they were looking at him.  She did not say for what.  I'm not going to open the door any further." Id.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court ordered an evidentiary hearing.  At the hearing, Counsel explained that his trial strategy was one of misidentification:

> There had been a significant gap in time between the dates that it was alleged that Mr. Gordon had sold cocaine on either occasion and the date of arrest.  My theory was, if they were so certain of Mr. Gordon's identity that they would have picked him up early because, obviously, cocaine is a dangerous drug, people can overdose, babies can be born addicted to the substance.  And if the sheriff's office

> was so concerned that Mr. Gordon was selling
> the substance they would have made a concerted
> effort if they – if they really knew what it
> was.   Otherwise, they were just kind of
> conducting a witch hunt.

(Ex. 11 at 27).   The post-conviction court denied this claim on the grounds that Officer Rodriguez' testimony did not rise to the level of collateral crimes evidence and that any prejudicial effect was kept to a minimum because Counsel had immediately ceased this line of questioning (Ex. 12 at 5).   Accordingly, the post-conviction court concluded that Petitioner failed to demonstrate either deficient performance or resulting prejudice under Strickland. Id. at 5-6.   The appellate court affirmed the post-conviction court's conclusion (Ex. 15).   A review of the record supports the state court's conclusions.

At the Rule 3.850 evidentiary hearing on Claim Two, Petitioner testified that he had never committed a crime in Lee County and that he had no idea why Lee County would be "looking" at him (Ex. 11 at 23-24).   Given Petitioner's assertion that he has not committed a crime in Lee County, he does not explain how Counsel could have anticipated Rodriguez' statement that Lee County was "looking" at him.   Moreover, Officer Rodriguez did not refer to any criminal activity or pending charges against Petitioner in Lee County, and Counsel was forbidden by the trial court from pursuing this line of questioning.   Therefore, Counsel had no opportunity to clarify why Lee County was interested in Petitioner.

Petitioner has not established that no reasonable counsel would have questioned Officer Rodriguez as to why she discussed Petitioner's case with a police sergeant in Lee County.

Moreover, because of the overwhelming evidence against him, Petitioner cannot demonstrate Strickland prejudice from Officer Rodriguez' testimony regarding her conversation with officers in Lee County. Officer Rodriguez testified at trial that the transactions involving Petitioner were arranged as undercover drug purchases. She posed as a drug dealer who needed a supply to pass on to her own workers (T. at 111). At trial, Officer Rodriguez identified Petitioner as the person who sold drugs to her on January 18, 2008 and on February 22, 2008. Id. at 101, 106, 107, 128, 129, 160, and 171. She also identified Petitioner from his driver's license photograph after he was stopped by Officer Ellis on February 22, 2008. Id. at 132. At trial, the state played an audio tape of the phone call setting up the second drug transaction and a video of the actual transaction which took place inside Officer Rodriguez' vehicle. Id. at 109, 110, 113-21, 133, 15, 163, 170, 174, 177.[7] Immediately after the second drug transaction, Officer Rodriguez provided Officer Ellis with the tag number and description of the seller's vehicle and told him the direction the

---

[7] The camera was not positioned so as to clearly capture the seller's facial features (T. at 132, 155-56).

vehicle was heading. Id. at 130-31.  Two to three minutes later, Officer Ellis stopped Petitioner's vehicle which was the same model and bore the same tag number as provided by Officer Rodriguez. Id. at 131, 182.  Given the quality and quantity of evidence against him, Petitioner does not demonstrate that the outcome of his trial would have differed had Counsel not elicited testimony from Officer Rodriguez that Lee County was "looking at" Petitioner.

Accordingly, under the AEDPA's deferential standard, Claim Two fails to satisfy either prong of Strickland and is denied pursuant to 28 U.S.C. § 2254(d).

### C.   Claim Three

Petitioner asserts that Counsel was ineffective for failing "to file contemporaneous motion[s] in limine to preserve and suppress exculpatory and inculpatory evidence." (Doc. 1 at 10).[8]

---

[8] This statement is confusing given Petitioner's statement that Counsel actually *did* file a motion to preserve all evidence in the case and his assertion in Claim One that the trial court erred by denying Petitioner's motion to dismiss based upon the destruction of the dash-cam video (Doc. 1 at 11).  While not a model of clarity, Petitioner's Rule 3.850 motion urged *inter alia* that Counsel was ineffective for failing to file a motion to suppress all evidence obtained from the February 22, 2008 traffic stop based on the state's alleged Brady violation (the destruction of Officer Ellis' dash-cam video).  Petitioner also repeated most of the same arguments as raised in Claim One (Ex. 7).  The Court will assume that Petitioner wishes to raise a Brady issue in Claim Three.  Petitioner's due process claim relating to the destruction of Officer Ellis' dash-cam video has already been discussed and rejected.  See discussion supra Claim One.  Any new claims or allegations not raised in the state courts are dismissed as unexhausted.

Specifically, Petitioner asserts that because Officer Ellis' dash-cam video of the February 22, 2008 traffic stop was destroyed, he was unable to prove that he did not match the physical description of the person who sold drugs to Officer Rodriguez on January 18, 2008. Id.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court understood the claim to allege that Counsel was ineffective for failing to ensure that Officer Ellis' dash-cam video was preserved.  The claim was denied on both prongs of Strickland (Ex. 10 at 5-6; Ex. 12).  The state post-conviction court wrote a detailed order explaining the reasons for its denial:

> Defendant states that there were discrepancies between the physical description given by the undercover officer in her incident report [and] that given in the written warning issued by the officer who stopped Defendant's vehicle.  Defendant has attached copies of these documents in his motion as Exhibits C and D.  Exhibit C is a one-page document labeled "incident Report," and identified as "Report Number: 0800001939."  It details the physical description of a person known only as "Vegas" and was printed on January 24, 2008.  In this document, Vegas was described as wearing a red shirt, black jeans and prescription glasses.  His hair was described as a short crew cut, and his face was described as clean shaven.  His teeth and speech were described as normal, his skin tone as dark, his build as thin, and his overall appearance as neat.  Exhibit D is a written warning from the police officer who stopped Defendant on February 22, 2008, the day of the second sale.  In this document, Defendant was described as wearing a white T-shirt and black jeans.  His hair was described as medium-length dreads,

and his face was described as having a
mustache and stubble.  His teeth and speech
were described as normal, his skin tone as
dark, and his build as thin.  It was also
noted that he had a tattoo on his left forearm.

The record reflects that the patrol officer
who stopped Defendant testified that he
received notice to be on the lookout for a
vehicle involved in a drug sale and had been
provided with that vehicle's description and
tag number.  The uniformed officer spotted the
vehicle as it drove by, caught up to it, and
pulled the vehicle over.  When asked how much
time had lapsed between being asked to look
out for the vehicle and pulling it over, the
officer responded that it took "approximately
two or three minutes from the time she called
me to the time I stopped the car."  When asked
about the in-car video of the stop, the
officer testified that there had been a video
recording of the stop, but because the stop
was routine, the video was designated as "non-
evidentiary," kept by law enforcement for one
year, then destroyed per police policy.  The
witness also testified that the video would
have shown the color, make, model and tag of
the car, but unless the driver got out of the
car and faced the camera, the video would not
have captured any identifying feature of the
driver.  The officer did not ask that
Defendant exit the vehicle and face the
camera.  He further testified that it was not
routine procedure to have drivers exit the
vehicle so that their faces could be recorded
on the video.

In his motion, Defendant claims that counsel
"was aware the State was prepared to present
the implausible evidence that Defendant
apparently sprouted Dreadlocks and grew a
Mustache and Stubble . . . in the brief interim
between the alleged sale and the stop."[9]
However, a review of the dates of the two

---

[9] Petitioner makes the same claim in the instant petition
(Doc. 1 at 13).

documents discussed above reveal that the descriptions were given approximately a month apart, and that the biggest discrepancies involved Defendant's hairstyle and facial hair. Defendant did not, in fact, "sprout Dreadlocks and [grow] a Mustache and Stubble" within three minutes of leaving the second sale. The undercover agent's description was given in January, while the uniformed police officer's description was given in February. It is not unreasonable that a person might grow their hair out during the interim. Thus, to the extent that Defendant claims that the video was crucial to counter this "implausible evidence," this Court disagrees.

Additionally, the record reflects that trial counsel questioned the undercover officer about her initial description of Vegas. He specifically asked her about Defendant's hairstyle, the tattoo, and his teeth.

. . .

The record also reflects that counsel made two motions for judgment of acquittal: one on the basis of the destroyed in-car video and the other on the theory of mistaken identity. Both motions were denied. Given the fact that the in-car video of the stop did not capture any identifying feature of Defendant, and that the differing descriptions were given at two points in time, a month or so apart, the in-car video of the stop was not as critical to Defendant's defense as he claims in his motion. Thus, counsel was not ineffective for failing to move to suppress the evidence based on the destruction of this video, nor was he ineffective for failing to move to preserve the evidence.

(Ex. 10 at 5-7) (citations to trial transcript omitted).

Florida's Second District Court of Appeal affirmed the post-conviction court's denial of this claim (Ex. 15). Although Brady was not specifically mentioned by the post-conviction court in its

lengthy opinion, the court's conclusions on this issue are still entitled to AEDPA deference. See Early v Packer, 537 U.S. 3, 8 (2002) ("A state-court decision is contrary to our clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Avoiding these pitfalls does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (internal quotations and citation omitted) (emphasis in original).  This Court will address both Petitioner's argument that Counsel was ineffective for failing to raise a Brady violation in state court and the argument that Counsel was ineffective for failing to seek preservation of Officer Ellis' dash-cam video.

First, Petitioner does not present clear and convincing evidence to refute the state post-conviction court's factual conclusion that the missing video would not have shown any identifying features of the driver of the car stopped by Officer Ellis on February 22, 2008. 28 U.S.C. § 2254 (e)(1).  As a result, the video could not have been used to compare Officer Rodriguez' January physical description of the drug seller with that of the driver (Petitioner).  At most, the video would have shown the

color of Petitioner's car.   As explained in Claim One, the jury was aware that Officers Rodriguez and Ellis differed in their descriptions of the color of Petitioner's car.   Therefore, the dash-cam video contained only "potentially useful evidence" of the sort referred to in Youngblood, as opposed to the material exculpatory evidence addressed in Brady v. Maryland, 373 U.S. 83 (1963).[10]   In Trombetta, the Supreme Court clarified the type of evidence a state would be required to preserve:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. at 488-89 (footnote and citation omitted).   Reasonable competent counsel could have concluded that the video's potential to resolve a minor discrepancy as to the color of Petitioner's car did not bring the dash-cam video within the ambit of "material

---

[10] In Brady, the Supreme Court concluded that the Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment.   373 U.S. at 87.   Such evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

evidence" contemplated by Brady or described in Trombetta.[11]
Therefore, Counsel's performance was not deficient for failing to
raise a Brady claim at Petitioner's trial.   See Grayson v.
Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) ("[I]n order to
show that counsel's performance was unreasonable, the petitioner
must establish that *no competent counsel would have taken the
action that his counsel did take*.")(emphasis in original).

Next, even if the dash-cam video showed the driver of the car,
it is unclear how Petitioner could demonstrate Strickland prejudice
from Counsel's failure to ensure its production.   Petitioner does not
dispute that he was the driver of the stopped car, nor does he dispute
Officer Ellis' physical description of Petitioner at the time of the
stop.   Petitioner does argue that Officer Ellis' description of
Petitioner differed from that of Officer Rodriguez and he could have
used the dash-cam video to bolster Officer Ellis' description (Doc.
1 at 12-13).   However, the state court reasonably categorized as

---

[11] Petitioner now argues that despite Officer Ellis' testimony
otherwise, the February 22, 2008 dash-cam video *might* have captured
his face and *might* have shown that he did not match Officer
Rodriguez' January 19, 2008 description (Doc. 1 at 14).   However,
Petitioner did not see the video and there is no indication that
he exited the car after his stop by Officer Ellis – in fact, he
does not claim to have done so. Petitioner's speculation as to
what the video may have shown is not clear and convincing evidence
of the sort to overcome the presumption of correctness afforded a
state court's factual determinations. See Aldrich v. Wainwright,
777 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to
carry the burden of a habeas corpus petitioner as to what evidence
could have been revealed by further investigation).

disingenuous Petitioner's argument that "the State was prepared to present the implausible evidence that [Petitioner] apparently sprouted Dreadlocks and grew a mustache and Stubble (and also had tattoos affixed and gold teeth added to his person) in the brief interim between the alleged sale and stop." (Ex. 10 at 5).  As noted by the state court, a month, not a "brief interim," passed between the referenced descriptions given by Officers Rodriguez and Ellis.  Id.  The post-conviction court's conclusion that Petitioner cannot demonstrate prejudice because "a person might grow their hair [or sprout a mustache] during the [longer] interim" was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702.

Moreover, Counsel questioned Officer Rodriguez regarding discrepancies in her description of Petitioner, and she explained why there were minor variations between her January description of the drug seller and Officer Ellis' February description of Petitioner:

> Q.   Now, the first transaction, you said you got a good look at Vegas, right?
>
> A.   That's correct, sir.
>
> Q.   And you described him as five nine in height; is that correct?
>
> A.   Yes, I did.
>
> Q.   170 pounds?

A.   What it says there, yes.

Q,   Black male?

A.   Yes.

Q.   Said that you didn't – you didn't know if
     he had any scars, marks, or tattoos; is
     that correct?

A.   No, he had a red shirt that was pretty
     long.  As you can see, he had a – always
     baggy shirts.

Q.   And you said that the hairstyle was a
     short crew cut, correct?

A.   A short haircut.

Q.   And that his teeth was [sic] normal,
     correct?

A.   That's what I can recall.

Q.   Okay.  So there were no gold teeth, no
     missing teeth?

A.   I really don't look and see if he got
     gold teeth.  You know, we're doing the
     transaction at that time.

Q.   Okay. So –

A.   Whatever I see visually right there is
     what I try to remember.

(T. at 153-54).  When questioned as to Petitioner's identity,

Officer Rodriguez testified that she had no doubt that Petitioner

was the person who sold cocaine to her on January 18 and February

22 of 2008. Id. at 171.  Given Officer Rodriguez' explanation, and

positive identification of Petitioner as the dealer, the state

court reasonably concluded that Petitioner cannot demonstrate

prejudice from the absence of Officer Ellis' dash-cam video.

Under the AEDPA's doubly deferential standard, Petitioner does not show that Counsel was constitutionally ineffective for failing to raise a _Brady_ claim, nor does he demonstrate _Strickland_ prejudice from Counsel's failure to ensure the preservation of Officer Ellis' dash-cam video.  The state court's rejection of the allegations in Claim Three was neither contrary to nor an unreasonable application of _Strickland_.  Neither was the rejection based upon an unreasonable determination of the facts.  Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability Pursuant to 28 U.C.S. § 2253(c)(1)[12]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such

---

[12] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether he is entitled to a certificate of appealability.

a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he may not appeal *in forma pauperis.*

Therefore, it is now **ORDERED AND ADJUDGED:**

ACCORDINGLY, it is hereby **ORDERED:**

1.   The Florida Attorney General is dismissed from this action.

2.   Each claim in Petitioner's 28 U.S.C. § 2254 petition is **DENIED.**

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___12th___ day of April, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Edward Lee Gordon
Counsel of Record